# Exhibit 2

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020

```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DIVISION OF CALIFORNIA

 3

 4   IN RE:  VOLKSWAGEN 'CLEAN     ) Case No.
     DIESEL' MARKETING, SALES      ) MDL No. 2672 CRB (JSC)
 5   PRACTICES, AND PRODUCTS       )
     LIABILITY LITIGATION          )
 6   _____)
                                   )
 7   Nemet, et al. vs. Volkswagen  )
     Group of America, Inc., et al.,)
 8   Case No. 3:17-cv-04372-CRB    )
     _____)
 9

10

11      VIDEOTAPED DEPOSITION OF PETER ROSSI, PH.D.

12      (Conducted remotely through Remote Counsel

13             videoconferencing)

14      Witness Location:  Peninsula Hotel
                      Santa Monica Boulevard
15               Los Angeles, CA

16           Wednesday, July 29, 2020

17            (Pages 1 through 206)

18

19

20
     Reported remotely by:
21    Janet M. Wood, CRR, RMR, CRC
     Certified Shorthand Reporter No. 9463
22

23

24

25
```

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 3 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020                                    Page 2

```
 1                UNITED STATES DISTRICT COURT

 2                NORTHERN DIVISION OF CALIFORNIA

 3

 4   IN RE:  VOLKSWAGEN 'CLEAN      ) Case No.
     DIESEL' MARKETING, SALES       ) MDL No. 2672 CRB (JSC)
 5   PRACTICES, AND PRODUCTS        )
     LIABILITY LITIGATION           )
 6   _____)
                                    )
 7   Nemet, et al. vs. Volkswagen   )
     Group of America, Inc., et al.,)
 8   Case No. 3:17-cv-04372-CRB     )
     _____)
 9

10

11         Videotaped deposition of PETER ROSSI, PH.D.,

12   taken remotely on behalf of plaintiffs, beginning at

13   9:11 a.m. and ending at 4:02 p.m., on Wednesday,

14   July 29, 2020, before Janet M. Wood, Certified Shorthand

15   Reporter No. 9463.

16

17

18

19

20

21

22

23

24

25
```

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 4 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020                                   Page 3

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFFS:
         THE PAYNTER LAW FIRM, PLLC
 3         BY:  CELESTE H. G. BOYD, ESQ.
              cboyd@paynterlaw.com
 4         106 S. Churton Street, Suite 200
           Hillsborough, North Carolina  27278
 5         (919) 307-9991
         THE PAYNTER LAW FIRM, PLLC
 6         BY:  STUART M. PAYNTER, ESQ.
              stuart@paynterlaw.com
 7         1200 G Street NW, Suite 800
           Washington, D.C. 20005
 8         (202) 626-4486

 9   FOR DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.:
         SULLIVAN & CROMWELL, LLP
10         BY:  MICHAEL STEINBERG, ESQ.
              steinbergm@sullcrom.com
11         1888 Century Park East
           Los Angeles, California 90067-1725
12         (310) 712-6670
         SULLIVAN & CROMWELL, LLP
13         BY:  STEPHEN J. MARIETTA, ESQ.
              mariettas@sullcrom.com
14         BY:  WILLIAM H. WAGENER, ESQ.
              wagenerw@sullcrom.com
15         125 Broad Street
           New York, New York  10004
16         (212) 558-4000

17   FOR THE BOSCH DEFENDANTS:
         CLEARY, GOTTLIEB, STEEN & HAMILTON LLP
18         BY:  LARRY WORK-DEMBOWSKI, ESQ.
              lwork-dembowski@cgsh.com
19         BY:  ERIK BAKKE, ESQ.
              ebakke@cgsh.com
20         2112 Pennsylvania Avenue, NW
           Washington, D.C. 20037
21         (202) 974-1588

22   ALSO PRESENT:
         Sahil Singh, Videographer
23          Huseby Global Litigation
         Emily Chapman, Remote Counsel Host
24          Huseby Global Litigation

25
```

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 5 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020     Page 72

1  government or academics?  Does the industry commonly use
2  the Nash equilibrium?
3      A   Well, this is -- I mean I don't mean to be
4  flippant, but there are -- the school or view economics,
5  so-called Chicago-based economics, which I -- I got my
6  Ph.D. from the University of Chicago, that the view's
7  that firms may act as though they are following this,
8  and that's the sense in which there's a useful model.
9  Even though they don't necessarily have to have any
10  conscious notion.
11         In other words, you don't have to be a
12  math- -- or the classic example is you do not have to be
13  an expert in geometry to play billiards, but you may
14  behave -- an expert billiard player --
15         Or, actually, maybe even a better analogy is
16  you don't have to be an expert in thermodynamics and an
17  aeronautical engineer to fly an airplane any more than
18  you have to know anything about how cars work to drive a
19  car; right?
20         So I may drive -- I may -- a good flier flies
21  in accordance with aerodynamic principles, which are
22  extraordinarily complicated and a highly mathematical
23  idea.  So it's possible.
24         So -- but to be very specific, firms in the
25  automotive industry do not as a regular basis, to my

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 6 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020                                              Page 73

1  knowledge, compute these things.  This is, I think, the
2  situation.
3           It's also true that virtually no commercial
4  applications of conjoint compute willingness to pay,
5  which is what Mr. Gaskin's computing.  This is a very
6  unusual calculation; in fact, one that has been
7  consciously de-emphasized.
8           Most firms do conjoint to make some sort of
9  predictions about sales, demand forecast.  That's why
10 they're doing it -- right? -- in my experience, you
11 know, and I've seen thousands of surveys.
12          So to answer your question, firms may act as
13 though they are behaving according to the concept of
14 Nash equilibrium.  Any -- right?  But they -- they are
15 not exclusively doing it --
16          (Clarification requested by the
17    reporter.)
18       THE WITNESS:  The Nash equilibrium.
19          Even though they're not explicitly aware of
20 it; right?  Any more than -- right? -- that the -- the
21 wheat farmers, you know, is a price taker, and that
22 farmer doesn't have to understand what economists mean
23 by "perfect competition."
24          So that's an answer to your question.  And --
25 and the objective here is to simulate a market price.

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 7 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020                                    Page 74

 1   That may not be the objective of many commercial
 2   conjoint studies.  May be to evaluate certain scenarios.
 3   Like if my competitor introduces the following product
 4   or changes their prices, what's going to happen to my
 5   sale, things of that sort, much more tactical, if you
 6   will.
 7             So these -- the objectives are not always the
 8   same, and that's one -- another reason why I would say
 9   it's not.  But it is -- it is true that in -- in
10   commercial applications -- commercial analyses, firms do
11   not routinely compute these things, market prices or
12   simulated market prices, via any kind of calculation.
13   That -- that is true, to the best of my knowledge.
14   BY MS. BOYD:
15        Q    And what about in the context of litigation?
16        MR. STEINBERG:  Objection to the form.
17   BY MS. BOYD:
18        Q    Have you --
19        A    Sorry.
20        Q    Go ahead.  No.  I'll let you -- I'll let you
21   go ahead and answer.
22        A    Well, I was going to ask.  Really,
23   "litigation" is a rather broad word.  And I have already
24   said that in the antitrust context, these -- these
25   models have become standard -- pretty much standard now

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 8 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020                                    Page 101

1  you -- which demand is less, willingness to pay is less,
2  then people -- then on the supply side, you're not -- in
3  a market equilibrium, sellers will be willing -- be
4  willing to sell fewer -- fewer units.  And that's what
5  happens -- right? -- as a matter of sort of standard
6  economic logic.
7           So all I'm suggesting is that difference in
8  price is the overpayment premium.  Okay.  And you -- you
9  apply that to the members of the class that you think
10 are appropriate to apply it to.
11          But that premium comes from a difference in
12 market price, and you have to allow for that to occur.
13 That's essentially the problem with their -- with their
14 measure, with the way they -- their procedure, I should
15 say, is that they don't account for supply in any way.
16          And they -- they -- they -- they're aware of
17 that, and -- and they just don't seem to be willing to
18 respond to that.
19     Q    So is it fair to say that in -- that your
20 criticism of Mr. Gaskin and Mr. Weir is based on the
21 idea that supply side factors would be different in a
22 world in which consumer demand was lower?
23     A    No.  No.  This is --
24     Q    Okay.
25     A    -- completely a misunderstanding of Mr. Weir.

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 9 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020

Page 110

1  with market price.  I think it's the only logical and
2  defensible, from an economic point of view, measure of
3  value.  And I don't dispute that, that we have that
4  measure of value, because we know what they paid.
5          What we don't know is what they would have
6  paid in the "but for" world.  That's the essence of the
7  problem.
8      Q  So we need to know what plaintiffs received,
9  the market price of what -- that would have existed --
10     A  That's correct.
11     Q  -- in order to value what they had received?
12     A  Given the definition of the "but for" world,
13  we need to calculate -- that's exactly right.  You're
14  exactly right.  That is the essence of the problem.
15  That's why Gaskin and Weir fail, because they don't do
16  it and they can't do it on the basis of the information
17  they provide.
18     Q  What plaintiffs received in this case was a
19  VW diesel vehicle containing a defeat device; is that
20  correct?
21     A  That's correct.  That's correct.
22     Q  Okay.  So I am going to -- just for
23  shorthand, I'm going to talk about a VW diesel vehicle
24  containing a defeat device as a "dirty diesel."  Okay?
25          I'm going to read you a definition.  If you

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 10 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020

Page 111

1 could tell me if you agree with it.

2     "Fair market value for a vehicle is the

3 highest price that a willing buyer would have paid on

4 the date of the transaction to a willing seller if there

5 was no pressure on either one to buy or sell and each of

6 them knew all the uses and purposes for which the

7 vehicle was reasonably capable of being used."

8     Do you agree with that definition?

9   A  I think that -- that is the essence of a

10 market equilibrium in a very simplified setting, yes.

11 Yes.

12     Q  Is that the essence of market equilibrium

13 that would apply here?

14   A  It's really the lowest price -- right? -- the

15 lowest price that willing buyers would be willing to

16 pay. Right. Because everyone who buys it has a

17 willingness to pay equal to or greater than the market

18 price. So it's the lowest price, not the highest price.

19 It's the lowest price, if I can make that as a

20 correction.

21     Q  So, in your opinion, fair market value for a

22 vehicle is the lowest price that a willing buyer would

23 have paid on the date of the transaction to a willing

24 seller if there was no pressure on either one to buy or

25 sell and each of them knew all the uses and purposes for

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 11 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020

Page 112

1  which the vehicle was reasonably capable of being used?

2      A   You know, that is true, but I would not call

3  that a definition of market price.  I think the

4  definition of market price is a market equilibrium price

5  in which the demand and supply forces are equalized.

6         And -- and that's -- I think that is the

7  correct definition.  And that -- that is going to be

8  where -- in that setting where the willingness to pay on

9  the part of buyers is equal to the willingness to sell

10  on the part of sellers.

11     Q   You think that market price is the same thing

12  as fair market value?

13         MR. STEINBERG:  Objection to the form.

14         THE WITNESS:  I don't know what "fair" means.

15  "Fair" may have some legal or moral implications.

16  Economics is somewhat neutral regarding that.

17         I -- I do agree that a -- I would call it a

18  market value.  And the reason we endorse that is it's an

19  objective measure of value.  It's not a subjective

20  measure.  It's an objective measure that can -- that can

21  be calculated and -- and is appropriate in this

22  instance.

23         So that's what the goal should be.  There's

24  no disagreement between Mr. Weir and Mr. Gaskin and me

25  on that.  We both -- we all agree that we need to

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 12 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020
Page 113

1  establish a market price in the "but for" world, and we
2  disagree on whether they've done that and whether they
3  can do that.  And they haven't done it and they can't do
4  it and they know it.
5  BY MS. BOYD:
6      Q   Do you agree that the market price -- that
7  determining a market price requires a willing buyer?
8      A   Yes.  In -- in -- in the sense that a market
9  equilibrium in a free market -- right? -- is a market --
10  an unfettered market, in other words, un- --
11  unconstrained by external authorities.
12          No one is forced to buy something they don't
13  want to buy.  So only -- the only people who buy it are
14  the people whose willingness to pay is equal to or
15  greater than the market price; right?
16          So people who -- for example, I'm someone who
17  doesn't even want -- I don't use a car.  My willingness
18  to pay for a car -- that's not true of me.  But -- but
19  you can imagine that could be well the case that someone
20  likes to walk or take public transportation.  Their
21  willingness to pay for a car could be very much below
22  the market price.  They're not in the market.  They
23  won't buy; right?  And no one's forcing them to buy;
24  right?
25          But people -- right? -- who the -- so it's

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 13 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020

Page 131

1  the fair market value of the dirty diesel that plaintiff
2  Michael Skena purchased here would be the highest price
3  a willing buyer of a dirty diesel would have paid on the
4  date of the transaction at issue to a willing seller of
5  a dirty diesel, assuming, one, that there is no pressure
6  on either one to buy or sell, and, two, that the buyer
7  and seller know all the uses and purposes for which the
8  vehicle is reasonably capable of being used?
9       MR. WORK-DEMBOWSKI:  This is Larry
10  Work-Dembowski.  Objection; form.
11       MR. STEINBERG:  Join.
12       THE WITNESS:  You know, again, this is this term
13  "fair market value," which I think we discussed a little
14  bit earlier.  Obviously, you read this definition to me
15  earlier.  But we also discussed this term "fair."
16       This is a noneconomic concept, so I'm not
17  exactly sure what is being said here, to be completely
18  honest with you.  And, you know, so, for example,
19  imagine a world in which there's only two buyers.
20  Right?  And one buyer is willing to pay $20,000 for
21  the -- the vehicle in question, and another buyer is
22  willing to pay $200,000.
23       According to this definition, the fair market
24  value would be $200,000, and that does not accord with
25  the economic definition of market value.

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 14 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020

Page 132

1    Market value comes from a market equilibrium.
2    This has some of the essence of that, but, if taken
3    literally, it -- it doesn't comport with my
4    understanding and definition and use of market price.
5    BY MS. BOYD:
6        Q   Okay.  But if it's -- if it is taken
7    literally, if it's taken for what it is, for what --
8    just for what it says on its face, is the fair market
9    value of the dirty diesel that plaintiff Michael Skena
10   purchased the higher -- the highest price a willing
11   buyer of a dirty diesel would have paid on the date of
12   the transaction at issue to a willing seller of a dirty
13   diesel, assuming that there is no pressure on either one
14   to buy or sell and that the buyer and seller know all
15   the uses and purposes for which the vehicle is
16   reasonably capable of being used?
17       MR. STEINBERG:  Object to the form.
18       THE WITNESS:  I do not understand the meaning of
19   the term "fair market value."  I do understand market
20   price.  I do not know what -- what is meant in this
21   context by whoever wrote this of fair market value.
22   That is what it says.  It is not --
23   BY MS. BOYD:
24       Q   According to what it --
25       A   -- market price.

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 15 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020

Page 133

1    Q   According to what it says, would what I just
2    said be true?  Would that be the definition according to
3    the words on the page that you're reading?
4    A   I think so.  But, again, this is -- I'm
5    just -- you know, I'm not, again, here applying any of
6    my expertise here because I'm not sure that my expertise
7    in economics applies to the domain here.  And the domain
8    here seems to be some other legal domain, and I don't
9    quite know what is meant.
10         And -- and the fair market value is in
11   quotes -- put in quotes here.  So --
12   Q   Sure.
13   A   And it does not -- it does not agree with the
14   definition of a market price.
15   Q   Okay.  Under this definition, again, taking
16   it on its face for the words on the page, if Michael had
17   purchased two dirty diesels, the fair market value of
18   those would be the highest price a willing buyer of two
19   dirty diesels would have paid on the date of the
20   transaction at issue to a willing seller of two dirty
21   diesels, assuming that there is no pressure on either
22   one to buy or sell and that the buyer and seller knew
23   all the uses and purposes for which the vehicle is
24   reasonably capable of being used; correct?
25        MR. STEINBERG:  Object to the form.

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 16 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020

Page 134

1    THE WITNESS:  I mean you've just rephrased the
2    same thing by you inserting "two dirty diesels" or "one
3    dirty diesel" for the implied product, whatever that
4    product is.  I guess here it's a car.  So you're saying
5    a car is a dirty diesel in one scenario, and in another
6    case it's two dirty diesels.  And I believe anything
7    could be inserted.  There could be a hundred dirty
8    diesels.  That -- that is what that's saying, you know,
9    as a matter of -- of logic but not as a matter of
10   economics.
11   BY MS. BOYD:
12       Q   Okay.  It could be anything.  So if it was
13   2,000 dirty diesels, then the fair market value of those
14   would be the highest price a willing buyer of 2,000
15   dirty diesels would have paid on the date of the
16   transaction at issue to a willing seller of 2,000 dirty
17   diesels, assuming that there is no pressure on either
18   one to buy or sell and that the buyer and seller know
19   all the uses and purposes to which the vehicle -- for
20   which the vehicle is capable of -- is reasonably capable
21   of being used; correct?
22       A   We're just rereading a definition.
23       MR. STEINBERG:  Objection to form.
24       THE WITNESS:  If -- if I defined red means blue
25   and I see red, then, according to that definition, it's

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 17 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020

Page 135

1  blue.  I mean that's all you're -- you know, I don't --

2  I don't have any basis for evaluating this -- this --

3  this phrase here.

4         So I'm not sure it really helps to get my

5  opinion about any of this stuff because it's outside of

6  my domain.  It is not what I understand to be and what

7  economists understand to be the definition of a market

8  price as written, word for word as written.

9  BY MS. BOYD:

10     Q   Let's assume that VW would have sold one TDI

11  vehicle in a world in which the presence of a defeat

12  device was known.

13         (Clarification requested by the

14     reporter.)

15     MS. BOYD:  In a world in which the presence of

16  the defeat device was known.

17  BY MS. BOYD:

18     Q   Do you understand that assumption?

19     A   I do.

20     Q   Are you saying that the fair market value or

21  market price -- sorry.  I'll just stick with market

22  price.

23         Are you saying that the fair -- that the

24  market price of each of the 550,000 TDI vehicles that VW

25  sold in the real world should be based on a "but for"

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 18 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020

Page 136

1  world in which only one vehicle was sold?
2      A   That's correct.
3      MR. STEINBERG:  Objection to the form of the
4  question, incomplete hypothetical.
5      THE WITNESS:  In that situation that you've given
6  me.
7  BY MS. BOYD:
8      Q   And is it your opinion, then, that that
9  market price for that one vehicle would be an accurate
10  indicator of value for the 550,000 class vehicles that
11  were actually sold in the real world?
12      MR. STEINBERG:  Object to the form.
13      THE WITNESS:  If it's a properly computed market
14  price, it would be acceptable.  Of course, this is an
15  absurdly extreme example that would never happen here.
16  We're talking about price reductions.  We're talking
17  about reductions in demand that are much less than that.
18  But that's correct.
19      The quantities sold in the "but for" world is
20  not relevant.  What is relevant is the market price that
21  is established.  And that differential would be part of
22  a damages estimate, may not be -- it may be -- it may be
23  offset completely, but it might be part of a damages
24  estimate.
25  BY MS. BOYD:

Case 3:17-cv-04372-CRB   Document 84-2   Filed 09/18/20   Page 19 of 19

Nemet, et al. vs Volkswagen Group of America, Inc. et al.
Peter Rossi, Ph.D. on 07/29/2020

Page 206

Certification of Court Reporter

Federal Jurat

I, the undersigned, a Certified Shorthand Reporter of the State of California do hereby certify:

That the foregoing proceedings were taken before me remotely at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were placed under oath; that a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; further, that the foregoing is an accurate transcription thereof.

That before the completion of the deposition, a review of the transcript was not requested.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney of any of the parties.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: August 7, 2020

_____
Janet M. Wood
Certified Shorthand Reporter
Certificate Number 9463